## Stallings, et al. v. Carpenter.

(Decided February 11, 1915.)

### Appeal from Wayne Circuit Court.

1. Principal and Agent—Secret Instructions—Effect as to Third Party.—Secret or private instructions to an agent, however binding they may be, as between the principal and agent, can have no effect on a third person who deals with the agent in ignorance of the instructions, and in reliance on the apparent authority with which the principal has clothed him.

2. Contracts—Settlement of Accounts—Implied Acceptance.—Where an agent is authorized by his principal to prepare a contract of settlement between the principal and a third party, and the contract is prepared and executed by the third party and returned to the agent, and the principal notifies the agent that he will not accept the contract because certain notes and checks were not returned by the third party, but this fact is never communicated to the third party, and the contract is retained by the agent for several weeks, during which time the property involved in the settlement is sold, and the third party is in no position to protect his rights, the principal is estopped to question the acceptance of the contract.

3. Contracts—Settlement—Evidence.—The terms of a written contract, and the circumstances under which it was executed, considered, and held that the contract was a complete settlement of the accounts between the parties thereto.

STONE & BERTRAM for appellants.

DUNCAN & BELL for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On September 5, 1911, appellee, Rex G. Carpenter, who was the owner of an oil and gas lease, known as the Dobbs lease, on a 50-acre tract of land in Wayne County, transferred a five-eighths interest therein to the appellants, A. R. Stallings, W. T. Robinson and Robert Andrews. The contract provided that appellee was to drill and case a test well free of cost to appellants, but that after the test well was drilled and cased, each of the parties was to pay his *pro rata* share of any other expenses incurred in operating and developing the lease. The test well was drilled on January 26, 1912. In order to drill the well, appellee placed on the land about $500 or $600 worth of supplies, consisting of a gas engine, tank, water station, etc. Thereafter appellants advanced cer-

tain sums to appellee to pay their part of certain expenses incident to the development of the lease. These sums were not applied to the purposes for which they were sent, but appellee claims that as a matter of fact they were applied to the payment of other valid claims against the lease. During the month of April, 1912, appellee left the State to visit his sister, who was ill. Thereafter he went to McAlister, Oklahoma. While he was absent certain creditors who held claims against the lease brought suit and had attachment levied on the lease itself and on the supplies and fixtures thereon. A. J. Cress, an attorney, was appointed corresponding attorney to notify appellants and appellee, who were non-residents, of the nature and pendency of the suit. On May 22, 1912, appellant Stallings, acting for himself and the other appellants, Robinson and Andrews, employed Cress to represent them in the suit. Thereafter some correspondence passed between Cress and the appellants with reference to a settlement of the matter. On June 5th, Stallings wrote Cress that they wished to make the best possible settlement of the matter, "and as we are unable to find Mr. Carpenter will leave the entire matter in your hands." On June 14, 1912, Stallings wrote Cress as follows:

"What we wish to do is to have a conveyance of the interest of Rex G. Carpenter to us, and if this can not be done without sale of the property we will let it go to sale for the judgments now entered and then buy it at the sale. We wish to know if that can be done in the cases now pending. If you can have Rex transfer his interest to us in such manner that it will not be incumbered by any other debts he may owe we will pay off the judgments and the other claims as soon as that is done."

On June 25, 1912, Stallings wrote Cress as follows:

"I hope by this time you have succeeded in getting Carpenter to transfer his interest in the Dobbs lease to us and if so please let me know and we will forward the money to pay off all the claims.    *    *    *    We want to get the matter closed up as soon as possible and if you have not yet succeeded in getting the transfer please speed it as much as possible."

On June 10, 1912, Cress wrote Carpenter that Robert Andrews had just left his office. The letter contains the following paragraph:

"They contemplate paying off the indebtedness and suing you on the overplus. I asked them if they would be

satisfied to square off with you if you would transfer to them your interest in the lease, and they agreed to quit on these terms. Think the matter over and see if you don't think that the thing to do, and if so, fix them up a transfer and mail same to me and I will hold it until an agreeable settlement can be reached, by which they sign up papers releasing you of anything which might come up against the property.

"Write me at once as Stallings will be here by the last of the week."

In response to this letter, appellee wrote Cress as follows:

"This letter authorizes you to draw up a transfer and send same to me to sign, stipulating the purpose for which it is given."

On June 15, 1912, Cress wrote appellee as follows:

"I am enclosing you transfer of remainder of Dobbs lease to Stallings, Robinson and Andrews jointly. In consideration of their indebtedness on the Dobbs lease, and the further consideration that you are released from any further liability on said lease."

The contract or transfer was executed by appellee on June 20, 1912. The material part of the contract is as follows:

"That whereas the said first party is indebted to the said second party in the sum of one dollar and other sums not herein mentioned, therefore in consideration of said indebtedness and as a full payment of same, the said first party sells and transfers, etc."

Appellee then mailed the contract to Cress, who received it a few days later. Cress made a copy of the transfer and sent it to Stallings. Stallings wrote Cress that they were unwilling to accept the transfer unless appellee returned to them two renewal notes for the sum of $278 each, and two checks for interest amounting to $5.57 each. The letter further stated that if the two notes, together with the interest checks, were returned, Cress could then put the transfer to record. If not returned they would let the property be sold at public auction and buy it in. Cress did not notify the appellee of appellant's refusal to accept the transfer. On July 22d, the property was sold and purchased by appellants. Appellee did not get back to Kentucky until August, 1912, when he learned for the first time that appellants had refused to accept the transfer, and that the property had

been sold and purchased by them. At that time he turned over to Cress the two notes for $278 each, but did not return the two interest checks amounting to $11.14, because the checks were for past interest which was due him.

On August 31, 1912, appellants filed separate suits to recover of appellee his *pro rata* share of the debts against the lease, and the other money which they claimed was owing to them. The actions were consolidated. Among other defenses, the appellee pleaded the transfer as a complete settlement and bar to appellants' right to recover. A trial before a jury was had, and a verdict rendered in favor of appellants. The judgment predicated on the verdict was thereafter set aside and the case referred to the master commissioner. After hearing evidence the commissioner reported that the transfer was intended to and did constitute a complete settlement of all accounts of every description existing between the parties, and that appellants therefore were not entitled to recover. Appellants' exceptions to the report were overruled, and judgment entered denying appellants any relief. From that judgment this appeal is prosecuted.

Two questions are presented: (1) Did the transfer become effective? (2) Did it release appellee from liability on the claim sued on?

(1) It is apparent from the correspondence of appellants that they were anxious to settle the matter by procuring a transfer from appellee of his interest in the lease. To this end they fully authorized Cress to act for them, as is shown by their letter of June 5th, wherein they placed the entire matter in his hands. It does not satisfactorily appear that before the transfer was sent to appellee for execution appellants notified Cress that they would not accept the transfer until the two notes for $278 each and the two interest checks for $5.57 each were surrendered by appellee. Even if they did, it is admitted that these secret instructions were never communicated to appellee. It is well settled that secret or private instructions to an agent, however binding they may be as between the principal and agent, can have no effect on a third person who deals with the agent in ignorance of the instructions, and in reliance on the apparent authority with which the principal has clothed him. Givens v. Cord, 44 S. W., 665; Jones v. Shelbyville F., &c., Ins. Co., 1 Metc. 58; Shelbyville v. Shelbyville,

&c., Turnpike Co., 1 Metc., 54. Though a special agent employed for a particular purpose, Cress was clothed with general authority for the accomplishment of that purpose. As the agent of appellants, he prepared the transfer in question. The transfer was signed and acknowledged by appellee and returned to Cress. Appellants then notified Cress that they would not accept the transfer until the notes and interest checks were surrendered by appellee. This fact was not communicated to appellee, nor was the transfer ever returned to him. Cress himself was authorized to accept the lease. Whether or not he or appellants had the right to reject if after it had been prepared by him and executed and returned, it is not necessary to decide. Certain it is that the circumstances demanded that he or appellants should have rejected the transfer within a reasonable time, considered in connection with the fact that the property was to be sold in certain judicial proceedings then pending. By retaining the transfer for several weeks, and failing to notify appellee of its rejection, or of any condition attached to its acceptance, until after the leased property was sold by the court, appellee was deprived of an opportunity to take steps to protect his interest in the matter, and appellants are in no position to question the acceptance, which must be conclusively presumed. We therefore conclude that the transfer became effective.

(2) As to the effect of the transfer there can be no doubt. The correspondence is admissible for the purpose of showing the consideration. The contract itself specified that "whereas the said first party is indebted to the said second party in the sum of one dollar and other sums not herein mentioned, therefore in consideration of said indebtedness and as a full payment of same, the said first party sells and transfers, etc." Cress's letter said: "I asked them if they would be satisfied to square off with you if you would transfer to them your interest in the lease, and they agreed to quit on these terms." In his letter accompanying the transfer he said: "I am enclosing you transfer of remainder of Dobbs lease to Stallings, Robinson and Andrews jointly. In consideration of their indebtedness on the Dobbs lease, and the further consideration that you are released from any further liability on said lease." Considering the language of the lease itself, and the correspondence relating thereto, we think it perfectly clear that the parties intended by the transfer to square their accounts, and that

appellee was thereby released from all indebtedness to appellants growing out of the lease or incurred in connection therewith.

Judgment affirmed.